NOT FOR PUBLICATION (Document No. 12)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
ROBERT F. McHALE and DELILAH :
A. McHALE, :
  : Civil No. 12-1363 (RBK/AMD)
              Plaintiffs, :
  :
    v. : **OPINION**
  :
  :
RALPH J. KELLY, :
  :
             Defendant :
_____ :

**KUGLER**, United States District Judge:

      This matter arises out of Plaintiffs Robert F. McHale and Delilah A. McHale's (collectively, "Plaintiffs") allegations of fraud, "aggravated negligence," and breach of fiduciary duty on the part of their erstwhile attorney Defendant Ralph Kelly ("Defendant"). Currently before the Court is Defendant's motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). For the reasons stated below, as well as certain of those stated in the Court's earlier disposition of Plaintiffs' claims, *see McHale v. Kelly (McHale I)*, No. 11-143, 2011 WL 4899987 (D.N.J. Oct. 14, 2011), the Court holds that Plaintiffs' cause of action for fraud is *res judicata*; in addition, their causes of action for negligence and breach of fiduciary duty are barred by Pennsylvania's statute of limitations. Thus, Defendant's motion to dismiss will be granted.

**I.**    **Factual Background and Procedural History**

1

The Court provided a full summary of the facts underlying Plaintiffs' claim in *McHale I*. *Id.* at \*\*1-2. A full recapitulation is not necessary here. Rather, it will suffice to note the following[1]: on July 12, 1999, Plaintiff Robert McHale was injured in a motor vehicle accident during the course of his employment. Plaintiffs hired Defendant to represent them in bringing various claims arising from his injuries. For a number of reasons, Plaintiffs were dissatisfied with the legal services provided by Defendant. They filed suit against him in this Court on January 10, 2011, asserting two causes of action: first, that Defendant had violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq.* (2011); second, that Defendant committed legal malpractice in his representation of Plaintiffs. *See McHale I*, 2011 WL 4899987 at \*\*1-3.

The Court dismissed both Counts of Plaintiffs' Complaint. With respect to the New Jersey Consumer Fraud Act claim, the Court noted the settled opinion of New Jersey courts that attorneys' services "fall within the learned professional exception" to the statute, and that therefore Plaintiffs could not sustain a claim against their former attorney on that basis. *Id.* at \*3 (citing *Vort v. Hollander*, 607 A.2d 1339 (N.J. App. Div. 1992)).

The Court also dismissed Plaintiffs' legal malpractice claim. Sitting in diversity and applying New Jersey choice of law principles,[2] the Court determined that Pennsylvania exhibited the "most significant relationship to the occurrence and the parties." *Id.* at \*7 (quoting *Rest. (Second) of Conflict of Laws* § 145(1) (1969)). Thus, Pennsylvania law, including its two year

---

[1] As always, for the purposes of ruling on a defendant's motion to dismiss, the Court accepts as true the factual allegations set forth in a plaintiff's complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Federal courts sitting in diversity "determine which state's substantive law applies by applying the choice-of-law rules of the jurisdiction in which the court sits." *Garcia v. Plaza Oldsmobile LTD.*, 421 F.3d 216, 219 (3d Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). New Jersey applies the "most significant relationship" test set out in the *Restatement (Second) of the Conflict of Laws*. *P.V. ex rel. T.V. v. Camp Jaycee,* 962 A.2d 453 (N.J. 2008).

statute of limitations on claims for tortious conduct like legal malpractice, applied to Plaintiffs' claim. After finding that the limitations period began to run on November 8, 2006, the Court held that Plaintiffs' action, filed in early 2011, was time-barred, and thus had to be dismissed upon Defendant's motion. *Id.* at *9.

Undeterred by the disposition in *McHale I*, Plaintiffs have now reasserted claims against Defendant. Specifically, their new Complaint states three causes of action, all sounding in tort. First, Plaintiffs allege that Defendant is liable for fraud. Compl. First Cause of Action. In support of this new legal theory, Plaintiffs allege virtually the identical facts they asserted in their time-barred legal malpractice claim in *McHale I*: Defendant advised Plaintiffs to pursue an "uninsured motorist" claim with the insurer of Plaintiff Robert McHale's former employer. *Id.* at ¶ 9. Defendant ultimately negotiated a settlement on behalf of Plaintiffs with the insurer, Liberty Mutual, in the amount of $725,000. *Id.* at ¶ 13. Thereafter, in July 2004, Plaintiffs learned that Mr. McHale's workman's compensation coverage would be cut "to less than 40%" of what they had been expecting. *Id.* at ¶ 14. In 2006, Plaintiffs learned that Defendant had erred in his prosecution of Plaintiffs' related personal injury litigation in a New York state court by serving the wrong party to the suit. *Id.* at ¶ 19.[3] In November of that same year, Plaintiffs learned that Defendant's advice to bring the uninsured motorist claim was also probably in error. *Id.* at ¶ 20. The new allegation in this complaint, however, is that, upon receiving documents from Defendant during the course of discovery in the *McHale I* litigation, Plaintiffs learned for the first time in September 2011 that Defendant was allegedly aware of these errors prior to 2006 but

---

[3] Apparently, the truck that collided with Defendant Robert McHale's vehicle on July 12, 1999 had been rented from the Ryder Truck Company. *McHale v. Anthony*, 895 N.Y.S.2d 367, 368 (N.Y. App. Div. 2010). Defendant, while representing Plaintiffs in a personal injury case in New York state court, served the incorrect Ryder entity. *Id.* at 368-69 (describing the difference between Ryder Truck Rental, Inc., which was the correct entity, and Ryder-TRS, Inc., which was the incorrect entity and the one that actually received the service of process). Plaintiffs maintain that this error resulted in a loss of $1 million in available insurance coverage. Compl. ¶ 23(b).

3

failed to apprise Plaintiffs of them. *Id.* at ¶¶ 22(a)-(c). This alleged concealment, Plaintiffs assert, amounts to fraud. *Id.* at ¶ 23.

The Complaint's Second Cause of Action states a claim for "aggravated negligence." The allegations supporting this cause of action are largely the same as those found in the Complaint's First Cause of Action: Defendant misrepresented himself as qualified to handle Plaintiffs' worker's compensation claim; he made mistakes by serving the wrong party in Plaintiffs' personal injury suit; after learning about these mistakes, he failed to tell Plaintiffs about them. *Id.* at ¶¶ 29, 31(a), 31(c).

Finally, Plaintiffs' Third Cause of Action alleges that Defendant breached a fiduciary duty to Plaintiffs because during negotiations with Liberty Mutual on the uninsured motorist claim, Defendant "consider[ed]" the insurer's initial settlement offer of $250,000, rather than "negotiating from a higher amount of at least . . . $900,000[]" at the start of the negotiations as [Defendant] had told [Plaintiffs] previously." *Id.* at ¶ 33(a). Plaintiffs cite this as evidence that Defendant "was not negotiating in good faith on [their] part." *Id.* Plaintiffs assert that they did not learn of Defendant's "consideration" of the lower settlement figure until they received certain documents in discovery during the *McHale I* litigation in September 2011. *Id.* at ¶ 34.

## II. Discussion

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Where, as here, a complaining party comes to this Court *pro se*, the Court must construe the complaint liberally in that plaintiff's favor. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992). In such cases, the Court must "accept as true all of the allegations in the complaint and all

4

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir.1997). Seen in this light, a complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680).[4] Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

**B.     Choice of Law**

As an initial matter, as was the case in *McHale I*, it is necessary for the Court, sitting in diversity, to determine which law applies to Plaintiffs' claims. The Court finds that Plaintiffs have not alleged any new facts in their current Complaint that would alter Court's choice-of-law

---

[4] Even under the liberal pleading standards afforded a *pro se* plaintiff, the Court need not credit such a party's "bald assertions" or "legal conclusions." *Haines,* 404 U.S. at 520-21; *Day,* 969 F.2d at 42.

5

analysis in *McHale I*.  Thus, Pennsylvania law will apply to all three of Plaintiffs' causes of action.[5]

### III.     Analysis

### A.     Fraud Claim

---

[5] Plaintiffs, strongly in favor of applying New Jersey law in the instant case rather than Pennsylvania law, attempt to distinguish their earlier legal malpractice claim based on negligence (to which the Court held Pennsylvania law should apply) from their current intentional non-disclosure claim based on fraud.  Specifically, they direct the Court's attention to language from the Restatement (Second) of Conflict of Laws suggesting that in claims alleging fraudulent misrepresentation, the place of the injury is "less significant" because in such cases, there may be "little reason in logic or persuasiveness to say that one state rather than another is the place of injury."  Compl. ¶ 26 (citing Restatement (Second) of Conflict of Laws § 145 cmt. f (1971)).  In addition, Plaintiffs quote the following language: "the local law of the state where the parties are domiciled . . . may be applied to determine whether one party . . . may be held liable to the other only for injuries resulting from intentional conduct or from some aggravated form of negligence . . . ."  *Id.* (citing Restatement (Second) of Conflict of Laws § 145 cmt. d (1971)).

While Plaintiffs correctly quote the language of the Restatement, they have failed to convince the Court that these comments alone are enough to alter the choice-of-law analysis conducted in *McHale I*.  First, the language cited is not binding on the Court, but is simply advisory in nature.  Second, the Court understands comment f to provide courts with flexibility in its choice-of-law analysis in cases involving alleged fraud; that is, it serves as an invitation to courts in such cases to give less weight than might otherwise be accorded to either the location of the alleged injury or the conduct causing the injury.  *See* Restatement (Second) of Conflict of Laws §§ 145 (2)(a)-(b).  But even granting Plaintiffs this point, the effect would be simply to dilute the significance of the relationship between Pennsylvania and Plaintiffs' tort claims.  It does little affirmatively to *strengthen* the significance of the relationship between those claims and the state of New Jersey.  As it stands, all Plaintiffs can offer in the way of factual allegations to support their argument that New Jersey law should apply is that Plaintiffs are citizens of and currently reside in New Jersey.  Compl. ¶ 1.  Notwithstanding this fact, the Court finds that the gravamen of their claim still involves an attorney they hired in Pennsylvania, a settlement agreement negotiated in Pennsylvania (and which by its own terms is governed under Pennsylvania law), and a personal injury law suit filed in New York.  Thus, even following the Restatement's suggestion that the "place of injury . . . not play an important role in the selection of the state of the applicable law," *see* Restatement (Second) of Conflict of Laws § 145 cmt. e (1971), the Court still confidently reaches the conclusion that Plaintiffs' claim for fraudulent misrepresentation against Defendant will be decided in accordance with Pennsylvania law.

Finally, while the quoted language from comment d at first glance appears very helpful to Plaintiffs' argument, when understood in its proper context it is entirely inapplicable.  Comment d, titled "The issue involved," is concerned with the situation in which a court applies the law of different states to different issues in the same case, a practice known as "dépeçage."  *Jones v. Southeastern Pa. Transp. Auth*, No. 91-7179, 1993 WL 141646 at *3 (E.D. Pa. Apr. 30, 1993) (misspelling the word as "depeage"); *Global Relief v. N.Y. Times Co.*, No. 01-8821, 2002 WL 31045394 at *10 (E.D. Ill. Sept. 11, 2002); *see Robidoux v. Muholland*, 642 F.3d 20, 26 (1st Cir. 2011) (citing comment d for the proposition that "the law of a single jurisdiction is not necessarily to be applied to all issues in a particular case.").  The language quoted by Plaintiffs is meant to illustrate a hypothetical situation in which the state where the injury occurred might supply the legal standard for acceptable conduct (e.g., the duty, breach, and causation elements of a tort claim) but the state in which a party is domiciled would supply the rule on whether a party will be liable "*only* for injuries resulting from intentional conduct"(as opposed to liability for simply negligent conduct) in the first place.  *See* Restatement (Second) of Conflict of Laws §§ 145 cmt. d (emphasis added).  Thus, despite Plaintiff's apparent hope to the contrary, this language provides no support for the proposition that the local law where a complaining party is domiciled should apply per se to claims of alleged fraud.

Although it relies on most of the same factual allegations as the claim for malpractice asserted in *McHale I*, Plaintiffs' current claim for fraud is of a distinct character that merits closer attention.  Essentially, Plaintiffs allege that Defendant learned of his errors in his representation of Plaintiffs, but that he knowingly failed to inform them of these errors, and that, without such information, Plaintiffs suffered harm when, among other things, they entered into a settlement agreement with Liberty Mutual.  This can otherwise be understood as an allegation of fraud by omission.  While normally the Court's task would be to consider whether the complaint properly alleges the elements of a fraud by omission claim under Pennsylvania law, and then to consider whether the claim may be barred by the applicable statute of limitations, the fact of the *McHale I* litigation renders such analysis unnecessary.  Instead, the Court holds that Plaintiffs' fraud claim is *res judicata* and therefore must be dismissed.

The doctrine of *res judicata* is rooted in the notion that a plaintiff be obliged "to present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence." *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 984 (3d Cir. 1984).  Thus, *res judicata* applies when three circumstances obtain: (1) there was a prior final judgment on the merits "involving (2) the same parties . . . and (3) a subsequent suit based on the same cause of action. *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).  Critical to the instant inquiry, when the prior judgment was rendered by a federal court sitting in diversity, the preclusive effect of that judgment would be that "which would be applied by state courts in the State in which the federal diversity court sits." *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).  Applied to the present circumstances, the claim preclusive effect of a judgment rendered by a federal diversity court located in New Jersey is that which would be due a judgment rendered by a New Jersey state court under New Jersey principles of claim preclusion.  While it

is a close question under New Jersey law, it appears that a dismissal of a claim on statute of limitations grounds operates as an adjudication on the merits. *See Walker v. Choudhary*, 40 A.3d 63, 75 (N.J. Super. 2012) ("[S]hould the motion judge determine that the suit against [the defendant] is barred by the statute of limitations, the grant of summary judgment to [that party] will serve as an 'adjudication on the merits,' but only with regard to her.").

In this case, *McHale I* and the instant suit involve litigation between the same parties. In addition, while Plaintiffs assert a new legal theory in this second action, it involves the same transaction as the earlier litigation: that is, it concerns Defendant's handling of Plaintiffs' worker's compensation and personal injury claims.[6] Finally, when this Court dismissed Plaintiffs' claims against Defendant for legal malpractice in *McHale I* as barred under the Pennsylvania statute of limitations, it was issuing a final adjudication on the merits as between those parties. *See Choudhary*, 40 A.3d at 75. Thus, Plaintiffs' claim for intentional non-disclosure is barred as a matter of *res judicata* and must be dismissed.

## C.     Aggravated Negligence Claim

Despite Plaintiffs' attempt to characterize the Second Cause of Action in their Complaint as involving "aggravated" negligence, the Court finds that Plaintiffs have simply reasserted their legal malpractice claim against Defendant. Thus, for the reasons described at greater length in *McHale I*, this claim is barred by Pennsylvania's two-year statute of limitations for tortious conduct. *See Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (citing 42 Pa.C.S.A. § 5524).

---

[6] The Court anticipates Plaintiffs' objection that it was not until the *McHale I* litigation commenced that Plaintiffs received documents revealing the allegedly fraudulent conduct of Defendant. Thus, Plaintiffs might argue, they were not in a position to assert a claim for intentional non-disclosure when they first brought suit in *McHale I*. However, it is undisputed that Plaintiffs learned of this information as their claim against Defendant was still pending. Thus, in order to preserve their fraud claim, the proper course of action would have been to *amend* their complaint against Defendant, rather than to reassert a second claim based on this new legal theory after the first one was dismissed as time-barred.

8

**D.    Breach of Fiduciary Duty Claim**

Plaintiffs' Third Cause of Action alleges that Defendant breached his fiduciary duty to his clients while conducting the 2004 settlement negotiations with Liberty Mutual.  This claim is also time-barred under Pennsylvania law.  By their own admission, Plaintiffs were dissatisfied with the settlement offers that Defendant presented to them, and they directed Defendant to "keep going back" to the negotiating table.  *See* Compl. ¶ 33.  Thus, while they may not have learned until later that Defendant was "considering" a lower settlement offer, they were certainly aware of their alleged injuries during the settlement negotiations in 2004.  Further, they were aware that the Defendant's conduct was the cause of their injury.   Therefore, their cause of action accrued on the date of the negotiations.  *See Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005).  In addition, given their knowledge of both the fact and cause of their injury, they may not rely on Pennsylvania's so-called "discovery rule" to toll the statute of limitations.  *See id.* at 859 (holding that the discovery rule applies in cases "where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises").  Accordingly, under Pennsylvania's two-year statute of limitations for tortious conduct, Plaintiff's claim for breach of fiduciary duty is time-barred.[7]  *See Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (citing 42 Pa.C.S.A. § 5524).

**III.    Conclusion**

For the reasons stated above, the Court finds that Plaintiffs' claim for intentional non-disclosure is barred by the doctrine of *res judicata*.  Further, Plaintiffs' claims for aggravated negligence and breach of fiduciary duty are barred by Pennsylvania's statute of limitations.

---

[7] As an alternate basis for dismissal of this Third Cause of Action, the Court notes that Plaintiffs have failed to plead a necessary element of the prima facie case for breach of a fiduciary duty under Pennsylvania law: specifically, that "[t]he defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries." *See Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414-15 (E.D. Pa. 2006) (noting the elements for a breach of fiduciary duty claim under Pennsylvania law).

Thus, the Court will grant Defendant's motion to dismiss all three of Plaintiffs' claims. An appropriate order shall issue today.

Dated:  12/5/2012                                                             /s/ Robert B. Kugler
                                                                              ROBERT B. KUGLER
                                                                              United States District Judge